**John V. URBANO, Plaintiff,**

v.

**UNITED STATES; The United States Department of Treasury; Secretary Of Treasury; George J. Weise, Commissioner of Customs, United States Customs Service; Audrey Adams, Port Director of Customs, for the Los Angeles Customs District, Defendants.**

**Slip Op. 97–68.**
**Court No. 95–12–01721.**

United States Court of International Trade.

May 30, 1997.

**1324**

Politis & Politis (John N. Politis), Los Angeles, CA, for plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States, Washington, DC; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, (Mikki Graves Walser, New York City); Commercial Litigation Branch, Civil Division, Department of Justice, Stephanie J. Dick, Deputy Associate Chief Counsel, Office of Associate Chief Counsel, United States Customs Service, of counsel, for defendants.

## OPINION

CARMAN, Chief Judge.

Before the Court is plaintiff John V. Urbano's ("plaintiff" or "Urbano") Motion for Judgment on the Agency Record pursuant to U.S. CIT R. 56.1. Plaintiff argues he was wrongfully deprived of his license as a United States Customs broker which was revoked pursuant to a hearing in 1994. Plaintiff maintains the commencement of formal revocation proceedings was barred by the five-year statute of limitations contained in 19 U.S.C. § 1641(d)(2) (1988). Plaintiff additionally argues the revocation hearing was tainted. Plaintiff also moves for Oral Argument pursuant to U.S. CIT R.7(c) on his Motion for Judgment on the Agency Record.

Defendants the United States, the U.S. Department of Treasury, the Secretary of the Treasury ("the Secretary"), George J. Weise, the Commissioner of Customs and Audrey Adams, the port director of Customs for the Los Angeles Customs District (collectively "defendants") oppose plaintiff's motion, arguing Customs properly instituted revocation proceedings within five years of the alleged violations. Defendants further argue the revocation hearing was conducted in accordance with the Administrative Procedure Act ("APA") and Customs regulations, and that the Administrative Law Judge's finding Customs presented substantial and overwhelming evidence to support the revocation of plaintiff's license was based upon credible evidence presented at the hearing. Defendants also oppose plaintiff's Motion for Oral Argument, arguing the issues in this case "have been thoroughly briefed by the parties and the factual materials necessary for this [C]ourt's determination are contained in the administrative record." (Defs.' Resp. to Pl.'s Mot. for Oral Arg. at 1.) As a result, defendants request this Court sustain the Secretary's decision adopting the ALJ's recommendation to revoke plaintiff's customs broker's license, deny plaintiff's motions and dismiss this action. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(g)(2), which gives the Court of International Trade ("CIT") exclusive jurisdiction over "any decision of the Secretary of the Treasury to revoke or suspend a customs broker's license or permit." 28 U.S.C. § 1581(g)(2) (1988). For the reasons which follow, this Court denies plaintiff's Motion for Oral Argument and plaintiff's Motion for Judgment on the Agency Record.

## BACKGROUND

Plaintiff John V. Urbano has engaged in the customs brokerage business since 1967. Plaintiff was issued individual broker's license number 6884 by the United States Customs Service ("Customs") on September 3, 1981. Plaintiff subsequently filed an application for and was granted permission by Customs to conduct business under the fictitious name "Royal International" on November 13, 1986. Plaintiff is also incorporated in the State of California as Royal International Customs Brokers, Incorporated.

On September 28, 1989, the Regulatory Audit Division of the United States Customs Service issued a report following its investigation of possible criminal violations relating

to plaintiff's embezzlement of Customs duties. The audit report disclosed 583 violations by plaintiff between 1985 and 1989 and concluded plaintiff, through Royal International, had (1) misappropriated Customs duties received from importers; (2) written checks to Customs on a bank account containing insufficient funds; and (3) failed to comply with various Customs Regulations pertaining to customs brokers. Admin. R. at 736.[1] The report recommended the district director revoke plaintiff's customs broker's license pursuant to 19 C.F.R. § 111.53(c),(f)[2] based on plaintiff's failure to comply with numerous regulations establishing procedures for record-keeping and conducting a business.[3] Admin. R. at 734–49, 1044–59, 1076–91.

After surrendering his customs broker's licence to Customs in 1990, plaintiff filed suit in this Court seeking the return of his license. This Court approved a Stipulated Judgment whereby the parties agreed and the Court ordered Customs to return to plaintiff his Customs broker's license to remain in effect until the outcome of the revocation proceedings. The judgment indicated Customs was free to institute revocation proceedings in the event it was deemed necessary. *See Urbano v. United States*, Court No. 91–03–00235 (CIT April 22, 1991). Customs returned plaintiff's license and he continued his employment with AFI (California), Inc. where his license supported the Los Angeles Customs District permit of his employer.

On March 9, 1993, the District Director of Customs in Los Angeles issued to plaintiff a "Notice of Preliminary Proceedings" pursuant to 19 C.F.R. § 111.59,[4] indicating Cus-

1. In a memorandum opinion and order addressing a pre-revocation hearing motion, the ALJ indicated plaintiff was

specifically charged with 36 instances of misappropriation of clients' funds in the total amount of $64,855; issuing seven checks to Customs in the total amount of $19,528 that were returned for insufficient funds; unauthorized use of Urbano's Customs license by a third person for the purpose of conducting Customs business; and failures to exercise reasonable supervision and control over Customs business.

*United States Customs Service v. Urbano*, No. LA–92–0042 RMG, Slip. Op. at 2 n. 1 (Aug. 15, 1994) (memorandum opinion and order).

2. 19 C.F.R. § 111.53 sets out grounds which justify Customs' seeking the suspension or revocation of a broker's license or permit, or the imposition of a monetary penalty in lieu thereof. *See* 19 C.F.R. § 111.53 (1994). The regulation allows the appropriate Customs official to revoke the license or permit of any broker if "[t]he broker has violated any provision of law enforced by Customs or the rules or regulations issued under any such provision." 19 C.F.R. § 111.53(c) (1994). The regulation also allows the appropriate Customs official to revoke the license or permit of any broker if "[t]he broker has, in the course of customs business, with intent to defraud, in any manner wilfully and knowingly deceived, misled or threatened any client or prospective client." 19 C.F.R. § 111.53(f) (1994).

3. *See* 19 C.F.R. § 111.21 (1994) (requiring broker to maintain "records of account reflecting all his financial transactions as a broker"); 19 C.F.R. § 111.23(a)(2) (1994) (requiring records be kept by a broker "for at least 5 years after the date of entry"); 19 C.F.R. § 111.25 (1994) (requiring a broker to "maintain his records in such manner that they may readily be examined" and "made available for inspection, copying, reproduction or other official use"); 19 C.F.R. § 111.28(a) (1994) (requiring broker to "exercise responsible supervision and control over the transaction of the Customs"); 19 C.F.R. § 111.29(a) (1994) (requiring brokers to exercise due diligence "in making financial settlements, in answering correspondence, and in preparing or assisting in the preparation and filing of records relating to any customs business matter handled by him as a broker"); 19 C.F.R. § 111.30(c), (e) (1994) (discussing the requirements for notification if the broker changes his business address, organization, name or location of business records); 19 C.F.R. 111.36(a) (1994) (forbidding brokers from "enter[ing] into any agreement with an unlicensed person to transact Customs business for others in such a manner that the fees or other benefits resulting from the services rendered for others inure to the benefit of the unlicensed person"); 19 C.F.R. § 111.37 (1994) (forbidding a broker from "permit[ing] his license, permit, or his name to be used by or for any unlicensed person, other than his own employees authorized to act for him"); 19 C.F.R. § 111.39(a) (1994) (forbidding brokers from "withhold[ing] information relative to any Customs business from a client who is entitled to the information"); 19 C.F.R. § 111.53(f) (discussing grounds for the suspension or revocation of a license or permit, *see supra* n. 2).

4. 19 C.F.R. § 111.59 addresses preliminary proceedings. Once the Notice of Preliminary Proceedings is served upon the broker, the regulation invites the broker to "show cause why the formal proceedings should not be instituted" and

toms was considering instituting a formal proceeding to revoke plaintiff's customs broker's license and affording plaintiff an opportunity to avoid such proceedings by showing cause within thirty days why formal proceedings should not be instituted. Admin. R. 1032–38. The notice was accompanied by a "Proposed Notice to Show Cause and Statement of Charges," which set forth the sections of the regulations plaintiff had allegedly violated. Plaintiff did not respond to the "Notice of Preliminary Proceedings" within the thirty-day period.

On July 5, 1994, the District Director issued a "Notice of Revocation Proceedings" with a "Notice to Show Cause and Statement of Charges," which indicated "[f]ormal proceedings looking to the revocation of Customshouse Broker's License No. 6884" were being instituted pursuant to 19 U.S.C. § 1641 (1988).[5] Admin. R. at 1064. The notice informed plaintiff he would be notified of the time and place of the hearing, he was entitled to file a verified answer, and he had both the right to be represented by counsel and the right to cross examine witnesses at the formal proceedings. *Id.* On July 6, 1994, the Assistant Regional Counsel for Customs in Los Angeles advised plaintiff by letter of the time and date of the revocation hearing on August 2, 1994 at 9:00 a.m. before an Administrative Law Judge ("ALJ") of the Federal Communications Commission. *Id.* at 1146. Plaintiff did not file a verified answer.

Plaintiff objected to the hearing and by letters dated July 11, 1994, demanded the revocation proceedings be canceled immediately due to the expiration of the statute of limitations set forth in 19 U.S.C. § 1641(d)(4) (1988).[6] Customs responded its institution and litigation of the charges against plaintiff were not time barred. The ALJ rescheduled the hearing date from August 2, 1994 to August 30, 1994 to allow resolution of the statute of limitations issue. In a Memorandum Opinion and Order responding to cross-motions for a Ruling on the Statute of Limitations, the ALJ indicated the revocation proceedings were not barred by the statute of limitations and ordered the hearing to proceed on August 30, 1994. *See United States Customs Service v. Urbano,* No. LA–92–0042 RMG (Aug. 15, 1994) (memorandum opinion and order).

Following the ALJ's determination the formal revocation proceedings were not time barred, plaintiff filed a second motion requesting a continuance to depose two Customs officials and the Customs auditor who conducted the audit of Royal International's books and records. In an order dated August 22, 1994, the ALJ denied plaintiff's motion for a continuance on the ground plaintiff failed to show cause for postponing the hearing. The ALJ denied plaintiff's request to depose the two Customs officials because there was no evidence they acted outside the

---

informs the broker that he "may make submissions and demonstrations." 19 C.F.R. § 111.59(b)(4), (5) (1994). The regulation also invites "any negotiation for settlement of the complaint," advises the broker of his right to counsel, requires the notice specify the place where the broker may respond in writing and advises the broker that the response must be received within thirty days of the date of the notice. 19 C.F.R. § 111.59(b)(6)–(9) (1994).

5. The applicable statutory provision addressing procedures for the institution of formal license revocation proceedings mirrors 19 C.F.R. § 111.59 and states

The appropriate customs officer may, for good and sufficient reason, serve notice in writing upon any customs broker to show cause why a license or permit issued under this section should not be revoked or suspended. The notice shall be in the form of a statement specifically setting forth the grounds of the complaint, and shall allow the customs

broker 30 days to respond. If no response is filed, or the appropriate customs officer determines that the revocation or suspension is still warranted, he shall notify the customs broker in writing of a hearing to be held within 15 days, or at a later date if the broker requests an extension and shows good cause therefor, before an administrative law judge ... who shall serve as the hearing officer.
19 U.S.C. § 1641(d)(2)(B) (1988).

6. The statute provides

no proceeding under this subsection ... shall be commenced unless such proceeding is instituted by the appropriate service of written notice within 5 years from the date the alleged violation was committed; except that if the alleged violation consists of fraud, the 5–year period of limitation shall commence running from the time such alleged violation was discovered.
19 U.S.C. § 1641(d)(4) (1988).

scope of their authority. Additionally, the ALJ noted the auditor no longer worked for Customs and therefore could not be ordered to appear. The order, however, did permit the plaintiff to depose the auditor at plaintiff's expense if the auditor voluntarily presented himself. *See United States Customs Service v. Urbano*, No. LA–92–0042 RMG (Aug. 22, 1994) (order denying plaintiff's request for a continuance).

The revocation hearing was held on August 30 and 31, 1994. On February 3, 1995, the ALJ issued his decision and order, recommending to the Secretary that plaintiff's license be revoked and stating

> [i]t has been held that where the government is aware that a broker has mishandled the affairs of importers, the government is obligated to investigate and, in appropriate circumstances, to revoke the broker's license. Accordingly, license revocation is recommended as the only appropriate sanction in this case to protect the importing community.

*United States Customs Service v. Urbano*, No. LA–92–0042 RMG, Slip Op. at 27 (Feb. 3, 1995) (decision and order) (*"Revocation Recommendation"*.) With regard to the issue of the five-year statute of limitations, the ALJ presiding at the hearing held

> [i]n *Fusco v. United States Treasury Department*, 695 F.Supp. 1189 (CIT 1988), the court noted that the Act does not distinguish between preliminary and formal proceedings. The court held that the revocation proceeding was instituted when the Proposed Notice To Show Cause And Notice Of Preliminary Proceeding was received by the respondent. *Id.* Thus, it is concluded that this proceeding was commenced within the applicable statute of limitations.

Admin. R. at 19.

In addressing plaintiff's due process claims, the ALJ held plaintiff was afforded due process and noted

> in view of the procedural status of the case on August 17, 1994, and the fact that Urbano had previously requested a continuance which was granted, and the further fact that there had been no request made to conduct discovery during that continuance,

it was within the discretion of the Presiding Judge under the APA to limit the discovery.

*Id.* at 20. The ALJ continued on noting "[t]he discovery rulings of the Presiding Judge are consistent with affording due process in administrative proceedings." *Id.* Finally, the ALJ addressed the specific charges against plaintiff in this case, dismissing only the third charge that plaintiff wilfully and knowingly, with an intent to defraud, misled or threatened any client or prospective client under 19 C.F.R. § 111.53(f) (1994). The ALJ said "[plaintiff's] liability for all but the fraud charges is established as a matter of law by the evidence that was introduced by Customs counsel." *Id* at 25.

On October 25, 1995, the Secretary adopted the recommendations contained in the ALJ's Decision and Order, stating "I concur with the ALJ's conclusion that [plaintiff] failed on repeated occasions to provide adequate supervision of his Customs brokerage business.... I hereby adopt the ALJ's findings of fact and recommended decision to revoke customshouse broker's license no. 6884 issued to [plaintiff]." Admin. R. at 1402.

## CONTENTIONS OF THE PARTIES

### A. Plaintiff

Plaintiff first argues the formal revocation proceedings were barred by the statute of limitations contained in 19 U.S.C. § 1641(d)(4) (1988), which requires Customs to initiate formal license revocations proceedings within five years from the date the alleged violation was committed.

Additionally, plaintiff argues the revocation hearing was tainted in four respects. First, plaintiff argues he was denied his due process right to engage in active discovery prior to the hearing and to depose all of his accusers. Second, plaintiff asserts he was denied access to documents relied on by the Customs auditor in preparing the audit report. Third, plaintiff maintains the government never considered and analyzed the business records of plaintiff's business which, plaintiff argues, provided exculpatory evidence. Fi-

nally, plaintiff argues the ALJ abused his discretion by not providing sufficient time to prepare for the revocation hearing and by refusing plaintiff access to the working papers of the Customs auditor "again in violation of plaintiff's Constitutional rights." (Pl.'s Mem. of Points and Auth. in Supp. of Mot. for J. Upon Agency R. ("Pl.'s Mem.") at 2.)

### B. Defendants

In response to plaintiff's allegation the formal revocation proceedings were barred by the statute of limitations, defendants argue the proceedings were instituted by Customs within the time frame provided by 19 U.S.C. § 1641(d)(4) (1988). Defendants explain on March 9, 1993, plaintiff was served by Customs with a "Notice of Preliminary Proceedings" and a "Proposed Notice to Show Cause And Statement of Charges," which informed him of the impending institution of formal proceedings to revoke his customs broker's license pursuant to 19 U.S.C. § 1641 and of his right to respond within thirty days of receipt of the notice. Defendants contend these notices constituted the written notice required by 19 U.S.C. § 1641(d)(4) and were provided within the five-year limit. Defendants conclude "[t]herefore, the finding by the ALJ that the proceedings instituted by Customs were not time barred was correct." (Defs.' Mem. in Supp. of Defs.' Resp. in Opp'n to Pl.'s Mot. for J. on Admin. R. ("Defs.' Mem.") at 10.)

Defendants next argue plaintiff was not deprived of his constitutional due process right when his request to engage in discovery on the eve of the revocation hearing was denied. Defendants explain under 19 C.F.R. § 111.67(c), the ALJ has discretion to permit or deny deposition discovery, and in this case, found such discovery should have been sought earlier in the proceedings in order to avoid disrupting the scheduled hearing date. Defendants maintain plaintiff failed to request a continuance in order to depose the Customs auditor until shortly before the second hearing date, and had not requested a subpoena or shown any likelihood that evidence in the auditor's papers might contradict the business records to be introduced at the hearing. Defendants conclude plaintiff was not deprived of due process because the ALJ authorized the deposition of the auditor if the auditor, who was no longer employed by Customs, voluntarily made himself available to plaintiff before the hearing.

Defendants also argue plaintiff's claim he was deprived of due process when the ALJ did not take into account his "allegedly incapacitating illness during the first six months of 1988" is "without merit" and "simply not accurate" because paragraphs 41 and 42 of the ALJ's Decision and Order specifically refer to plaintiff's illness as a mitigating factor. (Defs.' Mem. at 11.) Defendants note the ALJ concluded plaintiff's illness did not excuse him from his responsibility to supervise adequately his brokerage business.

Finally, defendants disagree with plaintiff's claim the Customs auditor's testimony was tainted and should have been given no weight by the ALJ because the auditor did not investigate or inquire about plaintiff's accounts receivable. Defendants argue the ALJ's decision was not based solely upon either the auditor's report or the auditor's hearing testimony, but upon the testimony of at least thirteen witnesses, including the plaintiff's testimony. Defendants conclude plaintiff's admissions regarding his conduct "demonstrated gross dereliction of his responsibilities as a licensed Customs broker prior to and throughout the 1988 calendar year which support several violations of the customs regulations." (Id. at 11.)

### STANDARD OF REVIEW

In reviewing the Secretary's decision to revoke plaintiff's customs broker's license, the Court shall set aside agency actions, findings, and conclusions that are unsupported by substantial evidence on the record, an abuse of discretion, or otherwise not in accordance with law. See 5 U.S.C. §§ 706(2)(A), 706(2)(E) (1988); Barnhart v. U.S. Treasury Department, 9 CIT 287, 290–91, 613 F.Supp. 370, 373–74 (1985). The agency's findings as to the facts are conclusive if supported by substantial evidence. See 19 U.S.C. § 1641(e)(3) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a con-

clusion." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986) (citations omitted), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987). The Court "may not substitute its judgment for that of the administrative agency", and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's findings from being supported by substantial evidence." *Barnhart,* 9 CIT at 290, 613 F.Supp. at 373 (citations omitted). In reviewing the Secretary's findings as to legal issues, the Court will review whether the Secretary's decision to revoke plaintiff's license constitutes an abuse of discretion. "After satisfying itself that the agency has acted within its statutory authority and the action was ... supported by substantial evidence, the Court must inquire whether the rationale is both discernable and defensible. In so doing, the Court ... need only assure itself the [Secretary's] decision was rational and based on consideration of relevant factors." *Barnhart,* 9 CIT at 291, 613 F.Supp. at 374 (citation omitted). *See Tempo Trucking & Transfer Corp. v. Dickson,* 405 F.Supp. 506, 514 (CIT 1975) (citation omitted) (providing "[w]hen the penalty chosen by an agency is within the range of sanctions provided by applicable disciplinary regulations, the severity of the sanction imposed is within the discretion of the agency".); *Fusco v. United States Treasury Dept.,* 12 CIT 835, 840, 695 F.Supp. 1189, 1194 (1988) (quotations and citations omitted) (noting "[a]n agency's choice of sanction is not to be overturned unless the reviewing court determines it is unwarranted in law ... or without justification in fact").

## DISCUSSION

### I. Statute of Limitations

█ Plaintiff argues the formal revocation proceedings were barred by the five-year statute of limitations provided for in 19 U.S.C. § 1641(d)(4) and, therefore, the Secretary's decision to revoke his customs broker's license should be overturned. The statute of limitations applicable in Customs broker revocation proceedings provides the Secretary

may "revoke or suspend a license or permit of any customs broker" as long as the "proceeding is instituted by the appropriate service of written notice within 5 years from the date the alleged violation was committed." 19 U.S.C. § 1641(d)(1),(4) (1988).[7] In setting out the procedures for instituting disciplinary proceedings, the statute states

> The appropriate customs officer may, for good and sufficient reason, serve notice in writing upon any customs broker to show cause why a license or permit issued under this section should not be revoked or suspended. The notice shall be in the form of a statement specifically setting forth the grounds of the complaint, and shall allow the customs broker 30 days to respond. If no response is filed, or the appropriate customs officer determines that the revocation or suspension is still warranted, he shall notify the customs broker in writing of a hearing to be held within 15 days, or at a later date if the broker requests an extension and shows good cause therefor, before an administrative law judge appointed pursuant to section 3105 of title 5 who shall serve as the hearing officer.

19 U.S.C. § 1641(d)(2)(B) (1988).

In ruling on the statute of limitations issue, the ALJ noted plaintiff failed to file a response after he received a preliminary notice of the proposed charges on March 9, 1993. The ALJ also noted when the revocation hearing was rescheduled at plaintiff's request from August 2, 1994 to August 30, 1994, plaintiff could have used the additional time to file an answer and "cannot now be heard to assert that he is prejudiced by the notice procedure that was utilized by Customs in the institution of this proceeding." *United States Customs Service v. Urbano,* No. LA–92–0042 RMG, Slip Op. at 4 (Aug. 15, 1994) (memorandum opinion and order). The ALJ noted this Court held in *Fusco v. United States Treasury Dept.,* 12 CIT 835, 695 F.Supp. 1189 (1988) that revocation proceedings were instituted when the "Proposed Notice to Show Cause and Notice of Preliminary Proceedings" were received by the respondent. The ALJ held for purposes of determining whether the statute of limita-

7. *See supra,* n. 6.

tions had run on the charges against plaintiff, the statute did not distinguish between the initiation of preliminary and formal revocation proceedings for statute of limitations purposes. As a result the revocation proceeding was found initiated on March 9, 1993. The ALJ stated "[t]he statute and the regulations are clear under *Fusco* ... that the institution of the informal proceeding on March 9, 1993, tolled the running of the statute of limitations. Therefore, the formal APA hearing that Customs initiated on July 5, 1994, while the statute of limitations was tolled, is not barred by the passage of time under 19 U.S.C.A. § 1641(d)(4)." *Id.* at 6.

Plaintiff, however, maintains his argument the statute of limitations on proceedings to revoke a Customs broker's license required Customs to initiate formal license revocation proceedings within five years from the date the alleged violation was committed, and that Customs failed to do so. Plaintiff explains after this Court's approval of the Stipulated Judgment in 1991, "Customs took *no* administrative action until March 9, 1993, when it issued a Notice of Preliminary Proceedings and a *Proposed* Notice To Show Cause and Statement of Charges," giving plaintiff preliminary notice of Customs' "intention" to institute formal proceedings to revoke his customs broker license. (Pl.'s Mem. at 2–3.) Next, plaintiff contends "Customs waited an additional nine (9) months and then instituted the formal proceedings for revocation of Mr. Urbano's customs broker's license." (*Id.* at 3.) Plaintiff concludes "[s]imply stated, these proceedings are time barred." (*Id.*)

Plaintiff argues the statute of limitations began running in December 1987 when Customs had actual knowledge of plaintiff's financial problems. Plaintiff contends the "preliminary proceedings of March 9, 1993, did not toll the running of the statute of limitations." (*Id.*) Plaintiff explains rather "[t]he notification of March 9, 1993, was entitled 'Preliminary' and was just that: a precursor of revocation proceedings.... This preliminary procedure is a non-mandatory, alternative dispute resolution procedure designed to avoid an unnecessary statutory proceeding." (*Id.* at 4.) Therefore, plaintiff argues, the Customs formal proceedings "are

the only proceedings which toll the running of the statute of limitations, but, without dispute, they were initiated six years after the statute of limitations commenced and over one year after it expired." (*Id.*)

Plaintiff acknowledges *Fusco*, which was cited by the ALJ for the proposition that the Notice of Preliminary Proceedings tolled the running of the statute of limitations, but argues "that case has no relevance to the case at bar." (*Id.* at 4.) Plaintiff maintains the proceedings required to toll the statute of limitations under 19 U.S.C. § 1641(d)(4) are limited to "proceedings under this subsection." Plaintiff argues, as a result, only the formal proceedings discussed in the statute toll the statute of limitations. In this case, "[t]he government delayed the commencement of the formal proceedings beyond the deadline [of] June 1, 1993." (*Id.* at 5.) Plaintiff concludes, therefore, "this case should be dismissed." (*Id.*)

Finally, plaintiff argues "[t]here is no statutory authority to unilaterally and indefinitely extend the statute of limitations as Customs asks this Court to do." (*Id.*) Under Customs' reasoning, plaintiff argues, "by merely initiating preliminary proceedings to toll the statute, the Customs Service can extend the statute of limitations until it is good and ready to proceed with the statutory proceedings however long that may be. That is contrary to the principles behind statutes of limitations." (*Id.* at 6.) Plaintiff concludes in this case, the preliminary proceedings are not set forth in the statute, are not mandatory, and, therefore, "[u]nder these circumstances, the only legal proceeding which tolls the statute of limitations is the mandatory one set forth in the statute." (*Id.* at 7.)

Defendants respond to plaintiff's claims by arguing Customs, in accordance with 19 U.S.C. § 1641(d)(2)(B), served on plaintiff a "Notice of Preliminary Proceedings" and a "Proposed Notice to Show Cause and Statement of Charges" which "was in the form of a statement specifically setting forth the grounds of the complaint *and* provided [plaintiff] thirty days within which to respond to the charges." (Defs.' Mem. at 15.) In addition, defendants maintain "the notice informed [plaintiff] of each and every charge

against him" and "of the procedures which would follow, including delivery of a final notice to show cause and statement of the charges, the scheduling of a hearing thereafter, his right to counsel and cross-examination at the hearing, and his right to file a verified answer prior to the hearing." (*Id.* at 15–16.) Defendants continue to explain Customs further followed statutory procedure in serving plaintiff with a "Notice of Revocation Proceedings" and "Notice to Show Cause and Statement of Charges" on July 5, 1994 and in notifying plaintiff by letter of the date, time and place of the revocation hearing and name of the administrative law judge who would preside.

Defendants disagree with plaintiff's assertion the preliminary proceedings are discretionary, and argue they are initiated pursuant to 19 U.S.C. § 1641(d)(2)(B) and the regulations promulgated in furtherance of the statute's provisions. Defendants assert

> [t]he regulatory provisions are far from non-mandatory or alternative dispute resolution procedures designed to avoid statutory proceedings as alleged by [plaintiff]. Rather, they were promulgated based upon the directives of § 1641, and incorporate the procedural requirements of § 1641. They outline all the procedures to be followed by the agency and ensure due process for all.

> These agency rules, moreover, distinguish between preliminary proceedings and formal proceedings. As applicable here, these agency rules provide that once the Commissioner of Customs determines that charges will be preferred against a broker (19 C.F.R. § 111.57(b)), the district

director is to "advise the broker of his opportunity to participate in preliminary proceedings with an opportunity to avoid formal proceedings against his license." 19 C.F.R. § 111.59(a). Thus, prior to the commencement of any proceedings, either preliminary or formal, the broker is "advised" through a "notice" of preliminary proceedings and a proposed statement of charges of an opportunity to participate in the proceedings. 19 C.F.R. § 111.59(b)(9) requires that the broker be afforded thirty days within which to respond. These provisions actually mirror the requirements of the statute, § 1641(d)(2)(B).

(*Id.* at 17–18.) Defendants conclude the regulations are not non-mandatory and fulfill the prescribed statutory procedure found in 19 U.S.C. § 1641(d)(2)(B) (1988). Defendants emphasize "[t]hat the agency regulations refer to the first stage of the revocation proceedings as 'preliminary' does not alter the fact that on March 9, 1993, the proceedings were instituted 'by the appropriate service of written notice' as required by 19 U.S.C. § 1641(d)(4)." (*Id.* at 19.)

Defendants additionally argue this Court decided this issue in *Fusco*, where the Court held a revocation proceeding was instituted when the "Proposed Notice to Show Cause And Notice of Preliminary Proceedings" was served upon the broker. Defendants disagree with plaintiff's argument *Fusco* is irrelevant to this case and argue "[q]uite the contrary, *Fusco* is instructive here as it directly addresses the crux of the issue before the court in this case." (*Id.* at 20.)[8] In comparing *Fusco* with this case, defendants argue "the crux of Mr. Fusco's argument was

---

8. Like the plaintiff in this case, Mr. Fusco was served with a "Notice of Preliminary Proceedings" and a "Proposed Notice to Show Cause and Statement of Charges," indicating Customs was considering instituting formal proceedings to revoke Mr. Fusco's customs broker's license and notifying him of the opportunity to show cause why his license should not be revoked. Customs instituted formal proceedings one year later with a "Notice to Show Cause and Statement of Charges," and, after a hearing, Mr. Fusco's license was revoked.

Plaintiff challenged the revocation of his license because the procedures in effect prior to the amendments made to 19 U.S.C. § 1641 by the Trade and Tariff Act of 1984 were utilized in

the revocation. In order to determine which statute governed the revocation procedures, this Court was faced with the issue of when the revocation proceedings had been instituted. Mr. Fusco argued the statutory proceedings were not instituted until notice of the formal proceedings were served, while the Government argued revocation proceedings were instituted upon the commencement of the preliminary proceedings when the "Proposed Notice to Show Cause and Notice of Preliminary Proceedings" were served upon the broker. The Court held the revocation proceeding was instituted when the "Proposed Notice to Show Cause and Notice of Preliminary Proceedings" were received.

essentially the same as that of Mr. Urbano, *i.e.,* that the statutory proceedings were not 'instituted' until the formal notice was served." (Defs.' Mem. at 21.)

In *Fusco,* this Court held the revocation proceeding was "instituted" upon the commencement of the preliminary proceedings, noting the statute did not distinguish between preliminary and formal proceedings when it stated *"[a]ny proceeding for revocation ... of a license instituted under section 641 of the Tariff Act of 1930 before the date of the enactment of this Act shall continue and be governed by the law in effect at the time the proceeding was instituted." Fusco,* 12 CIT at 838, 695 F.Supp. at 1192 (quoting the Tariff and Trade Act of 1984, Pub.L. 98–573, 98 Stat. 2948, 2989 (codified at 19 U.S.C. § 1304 note)) (emphasis added in *Fusco* ).

Noting plaintiff's attempt to distinguish this case from *Fusco* by asserting "the term 'any proceedings' is not used in the statute of limitations," defendants argue "[n]either § 1641(d)(2)(B) nor § 1641(d)(4) distinguishes between preliminary and formal proceedings for revocations." (Defs.' Mem. at 23.) Defendants continue to assert, rather,

> [t]he statutes merely provide for the commencement of proceedings by the service of notice. Section 1641(d) provides for disciplinary "proceedings" without more. Subsection (d)(4) provides for "limitations of actions" of revocation "proceedings," as well as suspension and unlicensed broker proceedings. As was the case in *Fusco,* the preliminary proceeding involved in this case is also a proceeding within the ambit of 19 U.S.C. § 1641(d)(2)(B). Thus, the revocation proceeding was "instituted" for purposes of the five-year statute of limitations on March 9, 1993, the date that the notice of preliminary proceeding was served.

*(Id.* at 23.)

Defendants note plaintiff's assertions that Customs, by merely initiating preliminary

proceedings to toll the statute, can indefinitely extended the statute of limitations until it is ready to proceed with statutory proceedings. Defendants argue, however,

> [n]ot only does Customs not unilaterally and indefinitely extend the period in which formal proceedings are instituted but to do so would contravene the purpose of revoking a license in the first place because a broker who is found to be in violation of Customs regulations and appeal[s][sic] that determination would still hold a license and be able to conduct ... Customs business until the matter is resolved.

*(Id.* at 23 (citation omitted).) Defendants argue the cases cited by plaintiff on this issue are inapposite, because the issue in this case is not when a breach of a bond occurred or whether unnecessary administrative proceedings are pending, but whether the notice of March 9, 1993 represented the initiation of revocation "proceedings" within the meaning of 19 U.S.C. § 1641(d)(4) (1988). Defendants conclude "[i]n this case, the proceeding to revoke Mr. Urbano's license was commenced within the time allowed by statute; therefore, it was commenced in a timely manner and all of Mr. Urbano's arguments on this point should be disregarded." *(Id.* at 26.)

After considering the arguments of all parties, this Court holds the ALJ's determination that the March 9, 1993 written preliminary notice—which was served upon plaintiff within five years from the date the alleged violations were committed—represented the initiation of "proceedings" within the meaning of 19 U.S.C. § 1641(d)(4) (1988) and tolled the running of the statute of limitations, and the Secretary's subsequent adoption of that determination, is supported by substantial evidence on the record and is otherwise in accordance with law.[9] Customs correctly followed statutory procedure in serving plaintiff with a "Notice of Preliminary Proceedings" and "Proposed Notice to Show Cause and Statement of Charges," in notifying plaintiff in writing of the grounds of

---

**9.** Defendants also point out plaintiff was charged with numerous violations which occurred over two years. Plaintiff, defendants explain, "treats the statute as having run from only the first violation without discussing the fact that all of the other violations occurred thereafter. Mr. Urbano does not discuss the fact that Customs could have instituted separate proceedings for each and every one of the over 50 violations committed by him. Several of the violations did not arise until February 1989." (Defs.' Mem. at 26 n. 10.)

the complaint and the charges against him, of plaintiff's right to respond to the charges within thirty days, and of the procedures which would follow, including delivery of a final notice to show cause and statement of the charges, the scheduling of a hearing thereafter, his right to counsel and cross examination at the hearing, and his right to file a verified answer prior to the hearing.

■ In addition, the Court disagrees with plaintiff's argument *Fusco* "has no relevance to the case at bar." (Pl.'s Mem. at 4.) In *Fusco,* this Court stated "[t]he issue in the instant action is whether the revocation proceedings against plaintiff are deemed 'instituted' from the date preliminary proceedings are commenced or from the date formal proceedings are initiated." *Fusco,* 12 CIT at 837, 695 F.Supp. at 1192. The Court is presented with the same issue in the instant case, and the parties make similar arguments. The Court previously was not persuaded by plaintiff's argument in *Fusco* that "the Notice to Show Cause initiates the procedures required to be followed in connection with the hearing, whereas the 'Notice of Preliminary Proceedings' accompanied by the 'Proposed Notice to Show Cause' triggers no such action." *Fusco,* 12 CIT at 838, 695 F.Supp. at 1193. Similarly, the Court is not persuaded by these arguments today. *Fusco* establishes the rule that revocation proceedings are instituted upon the commencement of preliminary proceedings and the Court follows this precedent in its decision today.

Customs followed its regulations in serving plaintiff with preliminary notices which alerted him to the possibility of revocation hearings, enabling him to respond. Plaintiff chose not to respond. This Court holds the ALJ's decision with respect to the statute of limitations and the Secretary's adoption of that decision is supported by substantial evidence on the record and is otherwise in accordance with law.

## II. Due Process Issues

■ Plaintiff alleges he was denied due process when the ALJ refused to permit him to depose certain Customs officials, deprived him access to the Customs' auditor's work papers, and failed to properly consider his illness during the first part of 1988 as mitigating evidence. Defendant, however, argues the administrative proceedings in this case were conducted in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 501–559, 701–706, 3105, 3144 (1988), whose provisions govern discovery during license revocation proceedings. Defendant argues the ALJ did not deprive plaintiff of due process *"in any respect."* (Defs.' Mem. at 27 (emphasis added).)

### 1. Time to Prepare for the Hearing

Title 5 U.S.C. § 556 governs the taking of evidence and the various powers of "employees presiding at [administrative] hearings." 5 U.S.C. § 556(c) (1988). Administrative law judges are authorized to "take depositions or have depositions taken when the ends of justice would be served" and to "regulate the course of the hearing." 5 U.S.C. § 556(c)(4), (5) (1988). The regulation implementing the statute, 19 C.F.R. § 111.67(c), gives the hearing officer the discretion to permit or deny deposition testimony. The regulation provides "[u]pon the written request of either party, the hearing officer *may permit* deposition upon oral or written interrogatories to be taken before any officer duly authorized." 19 C.F.R. § 111.67(c) (1994) (emphasis added).

■ This Court finds plaintiff was not denied due process as a result of the conduct of the formal revocation hearing, and the ALJ's decision with respect to plaintiff's depositions requests is supported by substantial evidence on the record and is otherwise in accordance with law. Plaintiff accuses Customs of attempting to deprive him of adequate time to make preparations for the hearing, and claims "[t]he ALJ danced in step with the Customs Service and wrongfully refused plaintiff's request for postponement of the hearing." (Pl.'s Mem. at 18.) While plaintiff correctly argues before he can be deprived of a property right he must be afforded notice and the opportunity to be heard, this Court finds plaintiff was afforded both notice and a significant opportunity to be heard. In addressing the question of due process in Customs broker's license revocation hearings, this Court previously noted,

[a]s annunciated in *Barnhart v. United States Treasury Department,* 7 CIT 295, 303, 588 F.Supp. 1432, 1438 (1984), "due process of law" requires notice and the opportunity to be heard. Additionally, the touchstone is one of fundamental fairness in light of the total circumstances. In the present case, plaintiff presented no proof that he was in any way prejudiced by denial of access to the administrative record prior to the hearing. He had sufficient notice and counsel competently presented plaintiff's case before the hearing officer. Plaintiff was also aware of the charges beforehand and the reasons Customs instituted proceedings against his customs-house broker's license. In light of these circumstances, the Court fails to find a denial of plaintiff's due process rights.

*Fusco,* 12 CIT at 840–841, 695 F.Supp. at 1195 (further citations omitted).

■ Similarly, the Court finds plaintiff in this case was aware of the charges beforehand and of the reasons Customs instituted license revocation proceedings. Like the plaintiff in *Fusco,* the plaintiff in this case had sufficient notice, competent counsel and was afforded notice of the charges against him and the opportunity to be heard. In this case, the initial notices of the charges against plaintiff on March 9, 1993, satisfied the statute's requirement that prior to the institution of a revocation proceeding, the respondent receive "notice by the agency in writing of the facts or conduct which may warrant the [revocation]" and the "opportunity to demonstrate or achieve compliance with all lawful requirements." 5 U.S.C. § 558(c)(1), (2) (1988). Additionally, the July 5, 1994 "Notice of Revocation Proceeding" with the "Notice to Show Cause and Statement of Charges" again informed plaintiff of each and every charge against him and of his opportunity to file a verified answer. Moreover, plaintiff was notified of his hearing date six weeks prior to the hearing. Plaintiff's opportunity to be heard, to present evidence and to conduct cross-examination was afforded at the

hearing on August 30–31, 1994, fulfilling 19 C.F.R. § 111.67(b)'s requirements that at a hearing the broker has "the right to examine all exhibits offered at the hearing," the "right to cross-examine witnesses" and the right to "present witnesses who shall be subject to cross-examination by the Government representatives." 19 C.F.R. § 111.67(b) (1994). This Court expressly finds that the ALJ acted reasonably when he declined to order discovery of witnesses on the eve of the hearing, especially in light of all the time that was available to the plaintiff prior to the hearing. As a result, this Court finds plaintiff was not denied due process of law.

Although this Court notes plaintiff's claim "[s]erious preparations commence [only] when the parties know that the matter is going to hearing," (Pl.'s Mem. at 18), plaintiff at a minimum could have commenced initial preparations after receiving the preliminary notices, especially taking into account Customs' notification to him that it was considering bringing a formal hearing. This Court does not agree with plaintiff's argument the government purposely spent sixteen months between the preliminary and final notices preparing for the formal hearing "all to [plaintiff's] detriment" and then only notified plaintiff "[w]hen all its preparations were substantially completed." (Pl.'s Reply Br. at 4, 9.)

Furthermore, the Court finds no evidence to indicate the ALJ in this case was biased in any way, nor to demonstrate the ALJ and Customs impaired plaintiff's rights in any way. This Court finds no evidence to indicate Customs "controlled the time when it would issue the formal proceedings so it could proceed and complete its preparations for the hearing before it served plaintiff with the formal revocation proceedings." (Pl.'s Mem. at 18.) This Court holds the ALJ did not abuse his discretion but correctly acted within his authority in refusing to grant an extension and postpone the hearing [10] and in

---

10. This Court also notes defendants' argument "[plaintiff] had known of the charges for over a year, had been notified of a hearing date six weeks previously, and had already been granted one extension of time during which no discovery

was sought. [Plaintiff] can hardly complain about lack of access, when he failed to request discovery until the hearing was imminent." (Defs.' Mem. at 31 (footnote omitted).)

limiting the amount of discovery to which plaintiff was entitled.

### 2. Testimony and & Alleged Bias of the Customs Auditor

■ Plaintiff argues the testimony of the Customs auditor "must be disregarded because it consisted of unreliable hearsay evidence; was one-sided in the government's interest; and biased." (Pl.'s Mem. at 12.) Plaintiff's principal complaint with regard to the Customs auditor's testimony was his alleged failure to inquire about plaintiff's accounts receivables. Plaintiff asserts

> [i]t is incredible that [the Customs auditor] ignored plaintiff's accounts receivable and relied solely on documents submitted to him by the complaining importers about paying the Customs duties twice. Apparently, none of the complaining importers told [the Customs auditor] that plaintiff also advanced funds for them. Any unbiased and competent auditor would have inquired about the accounts receivable to get an objective and accurate overview of plaintiff's operations. If the alleged double payments of Customs duties by importers were the events which led to the license revocation proceedings, why were they not conducted in a more competent fashion by the Customs Service? We believe the answer to that question is that the Customs Service was out to get [plaintiff] and only that evidence which pointed to culpability was analyzed and considered.

(*Id.* at 13–14.)

Plaintiff additionally argues "[a]dditional insight into [the Customs auditor's] persona and bias in this case was exposed at the hearing. [The Customs auditor's] bias for the government ... explains his refusal to appear at a depositions before the hearing." (*Id.* at 14–15 (citation omitted).) Plaintiff argues the Customs auditor "did not appear at the deposition because the government had done so much for him and plaintiff had done nothing for him. Yet nothing was done by his supervisors to insure that his report was fair and objective." (*Id.* at 15.)

Defendants argue "[t]he testimony of ... the Customs auditor was not tainted and the ALJ gave that testimony the weight it was due in light of all the testimony and evidence presented at the revocation hearing." (Defs.' Mem. at 34.) Defendants additionally argue the Customs auditor was not biased "and the evidence presented at the hearing demonstrated that a fair and objective audit of [plaintiff's] Customs broker's license was conducted." (*Id.* at 35.) Defendants note the facts which support the Secretary's decision to revoke plaintiff's license were found after a two-day hearing, during which numerous exhibits were presented and testimony from thirteen witnesses was given. Defendants conclude "[n]either the ALJ's recommendation nor the Secretary's decision to revoke [plaintiff's] broker's license rested solely on the conclusions of the auditor's report or the testimony of the auditor himself." (*Id.* at 36.)

This Court finds nothing in the record to indicate the Customs auditor was biased or that his report was unfair or unobjective. While the Court notes plaintiff's argument the Customs auditor's refusal to be voluntarily deposed by plaintiff suggests he was biased, this Court believes the ALJ was entitled to give the Customs auditor's testimony the weight the ALJ thought appropriate given the circumstances. This Court declines to substitute its judgment for the ALJ, who was present at and conducted the revocation hearing. Additionally, as this Court noted in response to a similar allegation of bias in *Anderson v. United States,* 16 CIT 324, 328, 799 F.Supp. 1198, 1203 (1992), "plaintiff had the opportunity to make a showing of bias or prejudice on cross-examination; no evidence of bias or prejudice emerged."

### 3. Access to the Customs Auditor's Notes and Work Papers

■ Plaintiff argues although "it was discovered during the cross examination of [the Customs auditor] that he had voluminous notes and back-up documents supporting his audit," plaintiff's request they be made immediately available was unfairly denied. (Pl.'s Reply Br. at 9.) Plaintiff maintains access to these papers was especially crucial because "plaintiff was effectively denied the opportunity to depose [the Customs auditor], and these documents contained exculpatory

evidence, else why would the government claim that they belonged [to][sic] the government and refuse access?" (Pl.'s Mem. at 15–16 (citation omitted).) [11] Plaintiff argues the ALJ's refusal to provide plaintiff access to the papers "is a grave violation of due process," committed solely because the government did not want to "disclose exculpatory evidence on [plaintiff's] case." (*Id.* at 16.)

Plaintiff further argues "the Customs Service entrusted an important audit to an inexperienced, biased auditor who knew very little about Customs broker operations." (*Id.* at 16.) Plaintiff's examples of the auditor's experience include: (1) the Customs auditor's failure to contact plaintiff to obtain information from him during the ten months of his audit, (2) the auditor's indication that Royal International and not plaintiff was under investigation "even though both were one and the same," (3) this was the first audit he performed alone, (4) he reached conclusions in his audit reports on subjects he never inquired about, and (5) "[The Customs auditor] did not know the definition of 'Customs business' which was one of the charges, yet he recommended that same charge against plaintiff.". (*Id.* at 16–17.) Plaintiff criticizes the ALJ for accepting the auditor's conclusions and argues the audit report drafted by the Customs auditor was "a dangerous weapon." (*Id.* at 17.) Plaintiff concludes "[r]evocation proceedings should be supported by sterner 'stuff.'" (*Id.*)

Defendants argue plaintiff was not denied due process when he was refused access to the Customs auditor's notes and work papers during the revocation hearing because plaintiff "did not have an unfettered right to these documents." (Defs.' Mem. at 31.) Defendants instead argue plaintiff "was accorded all the process which he was due." (*Id.* at 28.) Defendants explain plaintiff received the documents which formed the basis for the Customs auditor's report and the agency's decision to revoke his license, but did not request copies or access to the auditor's notes and working papers prior to the hearing. (*Id.* at 31; *see also* Admin. R. at 329.)

After considering the arguments from both parties on this issue, this Court disagrees with plaintiff's claim "[t]he ALJ ... abused his discretion when it was discovered on cross-examination of [the Customs auditor] that he had a large amount of working documents which backed up his audit report at government counsel's office just down the hall from the hearing room, and he refused plaintiff's counsel access to them." (Pl.'s Mem. at 19.) During the revocation hearing, the ALJ noted plaintiff's request and responded

> the evidence, although it would be relevant, it would be just as likely to confuse the record and to expand its length without us getting much benefit out of it at all.
>
> I think there is an element, too, of not having aggressively moved on this at an earlier time.
>
> And relevance notwithstanding, there is the open question of privilege. There would have to be an argument. At least, at a minimum, there would have to be motions on this anyway. I don't see the trade-off as benefitting the justice that we are trying to accomplish here....

Admin. R. at 332–33.[12] Instead, the ALJ allowed plaintiff wide latitude on cross-examination to question the Customs auditor about the papers. This Court notes, if as plaintiff argues, the documents contained ex-

---

**11.** Defendants respond to plaintiff's "unsupported allegation" the notes and work papers contained "exculpatory evidence" by arguing
[a]s [plaintiff] did not have an inalienable right to these documents and never had possession of them, he cannot legitimately speculate on their content. Moreover, as will be discussed more fully herein, the decision to revoke [plaintiff]'s broker's license was not based solely on the audit report. Instead, the decision to revoke his license was based upon the evidence presented at the revocation hearing. Nowhere in his brief does [plaintiff] challenge the credible evidence upon which the decision to rec-

ommend revocation by the ALJ, or the Secretary's decision to actually revoke the license, was based.
(Defs.' Mem. at 28 n. 12.)

**12.** In making this ruling, the ALJ cited Federal Rule of Evidence 403, which states "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

culpatory evidence, plaintiff had the opportunity to question the Customs auditor about the content of the documents. The Court further notes plaintiff did not request access or copies of the auditor's notes prior to the hearing. For seemingly inexplicable reasons, plaintiff, notwithstanding notice and the length of time that expired until the hearing, apparently did not seek discovery until the eve of the hearing or indeed in the hearing itself. This Court will not disturb the decision of the ALJ reasonably exercised to avoid further delay. Accordingly, the Court finds the ALJ's decision that the probative value of introducing the working papers and notes of the auditor was outweighed by the undue delay and waste of time that might result from their introduction is within the ALJ's discretion and is supported by substantial evidence on the record and is otherwise in accordance with law.

### 4. *Plaintiff's Illness as a Mitigating Factor*

Although plaintiff does not discuss the issue of his illness in great detail in his brief, in his complaint plaintiff argued he was deprived of due process because the ALJ "did not take into account the illness of plaintiff during the first six months of 1988 which incapacitated plaintiff and curtailed the time he was able to spend at his business." Compl. § 41. Defendants respond by arguing "[t]his allegation is simply not accurate. Paragraphs 41 and 42 of the Decision and Order of the ALJ specifically refer to [plaintiff]'s illness as a potentially mitigating factor." (Defs.' Mem. at 34.)

In paragraph 41 of the ALJ's Decision and Order in a section entitled "Mitigation", the ALJ discusses the evidence of plaintiff's illness and plaintiff's argument for mitigating circumstances offered in support of a sanction less severe than license revocation. In paragraph 42, the ALJ concludes while there is no apparent reason to disbelieve plaintiff was ill,

> by [February 1988] the business of Royal International had been terminated and business records had been turned over to the Customs Service. [Plaintiff's] illness does not excuse his failure to adequately supervise the business of Royal Interna-

tional.... In addition, by making at least periodic visits to the office [plaintiff] could have minimally assured that the necessary tasks were being performed by the Royal International office staff. [Plaintiff] testified that even in his weakened condition he was able to visit the office three days per week. Yet [plaintiff] just did nothing.

*United States Customs Service v. Urbano,* No. LA–92–0042 RMG, Slip Op. at 16–17 (Feb. 3, 1995) (decision and order). This Court finds plaintiff offered no evidence to demonstrate why the ALJ's decision with respect to this issue should be reversed and holds it to be supported by substantial evidence on the record and otherwise in accordance with law.

### CONCLUSION

For the reasons discussed above, this Court denies plaintiff's Motion for Judgment on the Agency Record. This Court finds the ALJ's recommendation that plaintiff's license should be revoked and the Secretary's subsequent adoption of that recommendation is supported by substantial evidence on the record and is otherwise in accordance with law. This Court also denies plaintiff's Motion for Oral Argument on its Motion for Judgment on the Agency Record, finding the parties' papers clear and extensive. This action is dismissed.

### JUDGMENT ORDER

This case having been duly submitted for decision, and this Court, after due deliberation, having rendered a decision herein; now in conformity with said decision, it is hereby

**ORDERED** that plaintiff's Motion for Oral Argument is denied and it is further

**ORDERED** that plaintiff's Motion for Judgment on the Agency Record is denied; and it is further

**ORDERED** that this case is dismissed.