SAARSTAHL AG, Plaintiff,

v.

UNITED STATES, Defendant,

and

Inland Steel Bar Co., Defendant–Intervenor.

Slip Op. 97–147.
Court No. 93–04–00219.

United States Court of
International Trade.

Nov. 5, 1997.

LeBoeuf, Lamb, Leiby & MacRae, Pierre F. de Ravel d'Esclapon, Mary Patricia Michel, Washington, DC, Grunfeld, Desiderio, Lebowitz & Silverman, Max F. Schutzman, David L. Simon, Jeffrey S. Grimson, New York City, deKieffer & Horgan, J. Kevin Horgan, Marc E. Montalbine: on Saarstahl's Comments on Final Results of Redetermination, Washington, DC, for plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (A. David Lafer, Jeffrey M. Telep); Marguerite Trossevin, Attorney–Advisor, Of-

fice of Chief Counsel, for Import Administration, United States Department of Commerce, of counsel, for defendant.

Wiley, Rein & Fielding, Charles Owen Verrill, Jr., Alan H. Price, Willis S. Martin III, Brian E. Rosen, Washington, DC, Dewey Ballantine, Michael Stein, Washington, DC, Skadden, Arps, Slate, Meagher & Flom, Robert E. Lighthizer, Washington, DC, for defendant-intervenor.

## OPINION

CARMAN, Chief Judge.

Before the Court is the Department of Commerce's ("Department" or "Commerce") *Final Results of Redetermination Pursuant to Court Remand Regarding the Privatization in Germany, Saarstahl AG v. United States, Consol. Ct. No. 93–04–00219 ("Final Results")*. The *Final Results* address the issue of whether Saarstahl Volkingen GmbH ("Saarstahl" or "Saarstahl SVK") was creditworthy in 1989, a year in which the company benefitted from government and private bank debt forgiveness.

Plaintiff argues the Department's decision in the *Final Results* is unsupported by substantial evidence on the record and is not otherwise in accordance with law. Neither defendant nor defendant-intervenor filed comments on the Department's *Final Results*. The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1581(c) (1988).

## BACKGROUND

As the Department noted in its *Final Results*, both the parties and the Court have described the detailed procedural and factual history of this proceeding extensively elsewhere, and the Court will not repeat that history again in this opinion. *See Saarstahl AG v. United States*, 967 F.Supp. 1311, 1313–17 (CIT 1997) ("*Saarstahl IV*") (providing detailed description of this matter's procedural and factual history).

In *Saarstahl IV*, this Court reviewed Commerce's *Final Affirmative Countervailing Duty Determination: Certain Hot Rolled Lead and Bismuth Carbon Steel Products From Germany*, 58 Fed.Reg. 6,233 (Dep't Comm.1993) ("*Final Affirmative Determination*" or "*Certain Hot Rolled Lead*") as modified by *Remand Determination: Certain Hot Rolled Lead and Bismuth Steel Products From Germany* (dated Oct. 12, 1993) ("*Remand Determination*"), and sustained Commerce's determination on all issues with the exception of Commerce's calculation of an uncreditworthy discount rate for Saarstahl in 1989. *See Saarstahl IV*, 967 F.Supp. at 1322. The Court found defendant's arguments advocating a remand on this issue were reasonable and granted defendant's request to remand this issue. This Court specifically ordered Commerce to "reconsider the issue of Saarstahl's creditworthiness and make a finding as to whether a risk premium should be included in the calculation of a discount rate" and to "recalculate the countervailing duties due, if any, as a result of the discount rate determination." *Id.* at 1322. Pursuant to the Court's remand, in the *Final Results*, Commerce followed the Court's instructions and stated:

> We have recalculated the benefit provided to Saarstahl from the government and private bank debt forgiveness using the same methodology and discount rate we used in our preliminary determination.... Because we have determined that Saarstahl was uncreditworthy in 1989, the discount rate employed includes a risk premium.

*Final Results* at 4.

In analyzing the issue of creditworthiness in the *Final Results*, Commerce explained "[w]hen the Department examines whether a company is creditworthy, it is essentially attempting to determine if the company in question could obtain commercial financing." *Id.* at 1–2. Commerce continued to explain "[t]he analysis of whether a company is creditworthy examines whether the company received comparable commercial loans and, if necessary, the overall financial health and future prospects of the company." *Id.* at 2.

After determining Saarstahl had not received any commercial financing in 1989, Commerce turned to an analysis of other indicators of Saarstahl's overall financial health and concluded Saarstahl was not "a financially healthy enterprise," after experi-

encing substantial financial difficulties in 1986, 1987 and 1988. *Id.* Commerce particularly noted Saarstahl's inability to make debt payments out of earnings and its inability to cover interest expenses from current earnings over the period in question. Commerce explained that "[t]his inability to cover interest expense from current earnings meant the company's financial condition was significantly deteriorating; when a company cannot meet its debt payments from current earnings, it must reduce its asset base or seek out new capital to finance its interest payments." *Id.* at 3. As a result of this analysis, Commerce concluded "Saarstahl was uncreditworthy in 1989." *Id.* at 4.

After determining Saarstahl was uncreditworthy in 1989, Commerce next recalculated the benefit provided to Saarstahl from the government and private bank debt forgiveness using the same methodology and discount rate it had used in the *Preliminary Determination* and included a risk premium in the discount rate. *See id.* at 4 (*citing Preliminary Affirmative Countervailing Duty Determination: Certain Hot Rolled Lead and Bismuth Carbon Steel Products from Germany,* 57 Fed.Reg. 42,971, 42,972 (Dep't Comm.1992)). Commerce's *Final Results* are now before this Court for review.

### STANDARD OF REVIEW

◼ The appropriate standard for the Court's review of a final determination by Commerce is whether the agency's determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is that which "'a reasonable mind might accept as adequate to support a conclusion.'" *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (citation omitted), *quoted in Matsushita Elec. Indus. Co., Ltd. v. United States,* 3 Fed Cir. (T) 44, 51, 750 F.2d 927, 933 (1984).

◼ The Court must accord substantial weight to an agency's interpretation of a statute it administers. *See e.g., American Lamb Co. v. United States,* 4 Fed. Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986) (citation omitted). While Commerce has discretion in choosing one interpretation over another, "[t]he traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress." *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986). *See also Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986) ("[T]his Court will not allow an agency, under the guise of lawful discretion, to contravene or ignore the intent of the legislature or the guiding purpose of the statute."), *aff'd,* 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987). The Court is not to substitute its own determination for the agency's but rather is to determine whether Commerce's determination is supported by substantial evidence on the record and is otherwise in accordance with law. *See, e.g., Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (noting "the possibility of drawing two inconsistent conclusions from the evidence does not permit an administrative agency's finding from being supported by substantial evidence"); *Universal Camera Corp.,* 340 U.S. at 488, 71 S.Ct. at 465, 95 L.Ed. at 467–68 (reviewing court may not "even as to matters not requiring expertise . . . displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*").

### DISCUSSION

Saarstahl first argues that in determining its creditworthiness in 1989, the year in which Saarstahl was determined to have obtained countervailable subsidies by the abandonment of the RZVs[1] by the governments of Germany and Saarland, "Commerce erred

---

**1.** The assistance provided to Saarstahl contained a repayment obligation known as "Rückzahlungsverpflich" or "RZV," which obligated Saarstahl to repay the German federal government and Saarland state government if the company returned to profitability. *See Saarstahl IV,* 967 F.Supp. at 1313.

by limiting its inquiry to financial information from the years 1986–1988" and "specifically refused to consider any of [Saarstahl's] financial information for 1989 or its future financial prospects." (Pl.'s Comments to Final Results of Redetermination ("Pl.'s Comm.") at 1.) Saarstahl maintains consideration of DHS's [2] financial information from 1989 would have lead to "vastly improved financial ratios." (*Id.* at 3.) Saarstahl contends because the conduct found to be countervailable occurred well into 1989, Commerce should have considered financial information pertaining to 1989. Saarstahl also adds because Saarstahl's "net worth rose from DM 1.87 million at the beginning of 1989," to over DM 920 million at the end of 1989 and to more than DM 1 billion in 1990 and because the 1989 financial information shows that the company was healthy, "a consideration of its 1989 financial information leads inevitably to the conclusion that [Saarstahl] was creditworthy in 1989. Accordingly, Commerce's remand determination must be reversed." (*Id.* at 1.)

Plaintiff further maintains "[t]he fact that [Saarstahl] did not take out any commercial loans in 1989 does not mean that its credit was not good enough to do so. It means that its financial condition was so good that it did not need to borrow any funds." (*Id.* at 4 (footnote omitted).) Saarstahl additionally argues when considering its financial position as of June 15, 1989, the day Saarstahl was privatized, "there is no basis for the addition of a risk premium." (*Id.* at 3.) Rather, Saarstahl argues Commerce should have considered the impact of privatization on Saarstahl's financial position.

In response to this contention, Commerce maintains while a company's future financial prospects may be considered in making a creditworthiness determination, Saarstahl "never provided for the administrative record any market studies, country or industry economic forecasts or other information re-

garding the company's prospects after privatization." *Final Results* at 5. Additionally, Commerce argues "the mere fact that the net worth of the company rose after privatization does not make the company creditworthy.... [S]tanding alone it does not provide sufficient evidence that Saarstahl was creditworthy, especially in light of the other evidence to the contrary." *Id.* at 5–6. Commerce concludes that "consistent with our established policy, we examined the three years *prior* to the receipt of the subsidy", which "as a practical matter, [ ]normally means that the Department examines the last three completed fiscal years of the company in question." *Id.* at 6 (*citing Proposed Regulations,* 54 Fed.Reg. 23,366, 23,380 (Dep't Comm.1989) (to be codified at 19 C.F.R. § 355.44(b)(6)(i))).

■ The Court finds Commerce's decision to consider only the three years prior to the receipt of the subsidy by Saarstahl is supported by substantial evidence on the record and is otherwise in accordance with law. By examining the three years prior to 1989, the year in which all outstanding repayment obligations for the funds provided to Saarstahl were forgiven and relinquished as a condition of Saarstahl's privatization, Commerce properly followed the policy established in its *Proposed Regulations,* which state:

§ 355.44  **Existence of a countervailable benefit.**

. . . .

(b)(6)(i) The Secretary will deem a firm to be uncreditworthy if the Secretary determines that the firm did not have sufficient revenues or resources to meet its costs and fixed financial obligations in the *three years prior to the year in which the firm and the government agreed upon the terms of the loan.* The Secretary will determine creditworthiness on a case-by-case basis, and *may examine,* among other factors, the following:

---

**2.** "DHS" is the short form for Dillinger Hütte Saarstahl AG. On April 20, 1988, the Saarland state government reached an agreement with Usinor Sacilor, a French company which owned German steel producer AG der Dillinger Hutten- werke ("Dillinger"), to merge Saarstahl Volklin- gen GmbH ("Saarstahl SVK") with Dillinger.

On June 15, 1989, Saarstahl SVK's name was changed to DHS and all assets and liabilities of Saarstahl SVK were transferred to DHS. *Usinor Sacilor* conditioned this agreement upon the federal and Saarland state governments' forgiveness of all of Saarstahl's RZV's. *See Saarstahl IV,* 967 F.Supp. at 1313–14.

(A) The receipt by a firm of comparable long-term commercial loans;

(B) The present and past financial health of a firm, as reflected in various financial indicators calculated from the firm's financial statements and accounts;

(C) A firm's recent past and present ability to meet its costs and fixed financial obligations with its cash flow; and

(D) Evidence of a firm's future financial position, such as market studies, country and industry economic forecasts, and project and loan appraisals.

*Proposed Regulations,* 54 Fed.Reg. at 23,380 (to be codified at 19 C.F.R. § 355.44(b)(6)(i)) (emphasis added). While the *Proposed Regulations* permit Commerce to consider a firm's future health and financial position, the permissive language of the *Proposed Regulations* gives Commerce flexibility and discretion in determining which factors to consider and weigh in making its creditworthiness decision. This Court will not substitute its judgment for that of Commerce's and it is not the Court's role "to re-weigh the evidence; rather the Court insures that Commerce's determinations are supported by substantial evidence." *Shieldalloy Metallurgical Corp. v. United States,* Slip Op. 97–116 at 7, 1997 WL 527947 at *3 (CIT Aug. 20, 1997); *see also Urbano v. United States,* 967 F.Supp. 1322, 1328 (CIT 1997) (citation omitted) ("The Court 'may not substitute its judgment for that of the administrative agency,' and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's findings from being supported by substantial evidence.' "); *Torrington Co. v. United States,* 965 F.Supp. 40, 42 (CIT 1997) (citation omitted) ("It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record.").

In this case, the Court finds Commerce's determination that Saarstahl was uncreditworthy in 1989 is supported by substantial evidence on the record and is otherwise in accordance with law. Commerce, contrary to plaintiff's assertions, is not required to consider future financial prospects in making a creditworthiness determination. Rather a company's future financial prospects are one of four factors which Commerce may consider in its discretion. This Court additionally notes that of the four factors, three are directed towards a firm's past or present financial conditions. Only one factor, the factor which plaintiff so strongly advocates, is directed towards a firm's future financial prospects. As a result, this Court finds Commerce's determination to consider the three years prior to 1989 falls squarely within the parameters of the *Proposed Regulations,* and is therefore sustained by this Court as supported by substantial evidence on the record and as otherwise in accordance with law.

Second, Saarstahl argues the Department's finding the Government of Saarland's 1989 equity investment in DHS [3] (the post-privatization entity) was not countervailable because it was consistent with commercial considerations is tantamount to a finding DHS was equityworthy as of June 15, 1989, the date on which Saarstahl's name was changed to DHS and all assets and liabilities of Saarstahl were transferred to DHS. (*See* Pl.'s Comm. at 4 n. 3.) Saarstahl concludes "[b]ecause the test for determining equityworthiness is almost identical to that for determining creditworthiness, there can be no real dispute that DHS was creditworthy as of June 15, 1989." (*Id.*)

Commerce responds to Saarstahl's second argument by asserting "[u]nlike the creditworthiness analysis in this remand, the Department's determination with respect to the Government of Saarland's equity investment in DHS was not based on an analysis of DHS's financial health or future prospects." *Final Results* at 7. Instead, Commerce explains it found the Government of Saarland's investment in DHS "was consistent with commercial considerations because other investors made equity infusions at the same time and on the same terms." *Id.* Commerce additionally noted "a company may be found to be equityworthy but not creditworthy."

---

**3.** *See supra,* note 2.

*Id. (citing Cold–Rolled Carbon Steel Flat–Rolled Products From Argentina: Final Affirmative Countervailing Duty Determination and Countervailing Duty Order,* 49 Fed. Reg. 18,006, 18,023 (Dep't Comm.1984)).

■ The Court finds Commerce's decision that the Government of Saarland's investment in DHS was consistent with commercial considerations because other investors made equity infusions at the same time and on the same terms is supported by substantial evidence on the record and is otherwise in accordance with law. The Court also notes that while plaintiff endeavors to focus this Court's attention on the post-privatization health of DHS, Commerce properly took into account the fact that for approximately half of 1989 before privatization, Saarstahl was uncreditworthy.

## CONCLUSION

After carefully considering the arguments of all parties, this Court finds Commerce's decision in *Final Results of Redetermination Pursuant to Court Remand Regarding the Privatization in Germany, Saarstahl AG v. United States, Consol. Ct. No. 93–04–00219* (*"Final Results"*), that Saarstahl was uncreditworthy in 1989, and its inclusion of a risk premium in calculating the discount rate for Saarstahl is supported by substantial evidence on the record and is otherwise in accordance with law. As a result, this Court sustains Commerce's *Final Results.*

### JUDGMENT ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** that Commerce's decision in *Final Results of Redetermination Pursuant to Court Remand Regarding the Privatization in Germany, Saarstahl AG v. United States, Consol. Ct. No. 93–04–00219* is sustained.