**SLIP OP. 99-15**
**United States Court Of International Trade**

```
-------------------------------------------------------x
ABRAHAM SHIEPE, CUSTOMS              :
BROKER LICENSEHOLDER NO. 7114        :
                  Plaintiff,         :
                                     :
                                     :
            v.                       :      BEFORE:  Wallach, Judge
                                     :      COURT NO.: 96-12-02866
UNITED STATES; THE                   :
COMMISSIONER OF CUSTOMS AND          :
THE SECRETARY OF THE                 :
TREASURY,                            :
                  Defendants.        :
-------------------------------------------------------x
```

[Plaintiff's Motion for Summary Judgment on the Administrative Record is denied.]

Decided: February 4, 1999

Grunfeld, Desiderio, Lebowitz & Silverman, LLP (Steven P. Florsheim), for Plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Field Office; Mikki Graves Walser, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; Paul Wilson, Associate Chief Counsel, Office of Associate Chief Counsel, United States Customs Service, for Defendant.

**OPINION**

**I**

**INTRODUCTION**

Plaintiff Abraham L. Shiepe ("Shiepe") contests the decision of the Secretary of the

Treasury ("Secretary") to revoke his customs broker's license. He contends that the alleged

misconduct that resulted in the revocation of his license was due to confusion about the

procedure for filing corporate documents with the California Secretary of State and U.S.

Customs Service ("Customs") and that the revocation of his license is fundamentally unfair. He

has moved for Summary Judgment on the Administrative Record pursuant to USCIT R. 56.1.

For the reasons which follow, his Motion is denied, and the revocation is affirmed.

## II

### RELEVANT FACTS

In 1988, Modawest International Inc. ("Modawest"), a California corporation, decided to engage in importing.  See Direct Examination of Coligny Couderc on 7/27/95 ("Examination of C. Couderc"), at Court Record ("C.R.") 808-09; Cross-Examination of Deborah McAllister Scott on 7/26/95 ("Cross-Examination of Scott"), at C.R. 563-64; Memorandum signed by Michelle Couderc, Vice-President and Secretary, of 8/15/88 ("Memorandum signed by M. Couderc of 8/15/88"), Shiepe Exh. 26, at C.R. 939.  To do so, Modawest needed an officer who was a licensed broker.  See 19 C.F.R. § 111.11(c)(2) (1992); Direct Examination of Caroll Marie Daunis on 7/25/95 ("Examination of Daunis"), at C.R. 105; Examination of C. Couderc, at C.R. 809.  As a result, on August 15, 1988, the Board of Directors of Modawest elected Shiepe, a licensed broker, an officer of the corporation.  Memorandum signed by M. Couderc of 8/15/88, Shiepe Exh. 26, at C.R. 939; Direct Examination of Shiepe on 7/27/95 ("Examination of Shiepe"), at C.R. 624-27; Examination of C. Couderc, at C.R. 809.   From that point on, Shiepe supervised Modawest's import business.  Direct Examination of Michelle Couderc on 7/26/95, at C.R. 491-92.

On December 2, 1988, Shiepe signed and filed an application on behalf of Modawest for a customs broker's license.  See Application for Customhouse Broker's License of 12/2/88, Shiepe Exh. 23, at C.R. 934-35.  On August 11, 1989, Customs informed Shiepe that Modawest's application was unacceptable because the corporation's Articles of Incorporation failed to state

that Modawest was "empowered . . . to transact Customs brokerage business" as required by 19 C.F.R. § 111.11(c)(1). Memorandum from Janiszewski, Chief, Broker Compliance and Evaluation Branch to District Director, Los Angles, CA, of 8/11/89 ("Memorandum from Janiszewski of 8/11/89"), Agency Exh. 2/16, at C.R. 960. Later that month, under Shiepe's supervision, Modawest sent Customs a Certificate of Amendment ("Amendment") to its Articles of Incorporation with the language Customs required. See Facsimile from Tammons, Broker Compliance, Los Angeles, CA, to Rosenthal, Headquarters, Broker Compliance, of 8/24/89 and Amendment of 8/21/89, Agency Exhs. 16/1-16/2, at C.R. 1124-5; Examination of Shiepe, at C.R. 699-701.

The corporation number assigned to Modawest by the California Secretary of State was noted at the top right hand corner of the Amendment. See Amendment of 8/21/89, Agency Exh. 16/2, at C.R. 1125. The Amendment, however, had not been accepted by the California Secretary of State. Amendment of 8/21/89 with handwritten notes, Shiepe Exh. 2, at C.R. 876; Direct Examination of Deborah McAllister Scott on 7/26/95, at C.R. 528-30. When it was submitted to Customs, there was no cover letter accompanying the document or any other explanatory paper that disclosed that the Amendment had not been properly filed. See Decision and Order of the Administrative Law Judge, at C.R. 53 (citing Examination of Shiepe, at C.R. 696).

On September 11, 1989, Customs, unaware of the delayed clearance of the Amendment by the California Secretary of State, issued Modawest a customhouse broker's licence. See License For Customhouse Broker, Agency Exh. 2/9, at C.R. 953; Examination of Shiepe, at C.R. 699-700, 702. In June 1990, a Customs inspector discovered Modawest's Articles of

Incorporation had never been filed in California. Examination of Daunis, at C.R. 185, 239. On February 11, 1991, the California Secretary of State confirmed that no Amendment to the Articles of Incorporation had been filed. See Certification from March Fong Eu, Secretary of State of State of California, of 2/11/91, Agency Exh. 2/18, at C.R. 962; Examination of Daunis, at C.R. 238-40. Therefore, until Customs investigated the matter, the agency was led to believe that the Amendment to Modawest's Articles of Incorporation submitted by Plaintiff on August 23, 1989 was a true copy of a valid corporate Amendment.

After Modawest was licensed, Shiepe decided to form Modawest Custom House Broker, Inc. ("MCHB"), a separate corporation that would only conduct customs business. Examination of Shiepe, at C.R. 662. On April 13, 1990, Shiepe submitted to Customs copies of an application requesting a name change, MCHB's Articles of Incorporation, and an unfiled Amendment to MCHB's Articles of Incorporation noting that the purpose of the corporation was, inter alia, "TO TRANSACT CUSTOMS BROKERAGE BUSINESS."[1] Letter from Shiepe to Broker Compliance, U.S. Customs Service, of 4/13/90 with attachments, Agency Exhs. 2/19-2/26, at

---

[1] Shiepe also submitted a certificate from the California Secretary of State dated March 30, 1990 attaching a copy of MCHB's Articles of Incorporation dated November 10, 1989 that were filed with the California Secretary of State on March 23, 1990 and an Amendment dated March 5, 1990. Certification from March Fong Eu, Secretary of State of State of California, of 3/30/90 with attachments, Agency Exh. 2/22, at C.R. 966-70. The stated purpose of MCHB in the Articles of Incorporation was "to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California . . . ." Id. at C.R. 967. This document was signed, inter alia, by Shiepe as a Director of the corporation. Id. at C.R. 968-69. The Amendment dated March 5, 1990, several days before the filing of the Articles of Incorporation, amended the purpose of the corporation to read: "TO TRANSACT CUSTOMS BROKERAGE BUSINESS." MCHB Amendment, Agency Exh. 2/26, at C.R. 970. This document was signed, inter alia, by Shiepe as Treasurer. Id.

C.R. 963-970; Examination of Daunis, at C.R. 106.

Shiepe's cover letter and the attached application sought a corporate name change from Modawest to MCHB.  Examination of Daunis, at C.R. 110-111.  Shiepe, however, never submitted an authorization from the California Secretary of State to change Modawest's name, as required by Customs' regulations.  See 19 C.F.R. § 111.12(a) (1992) ("If the applicant proposes to operate under a trade or fictitious name in one or more States within the [Customs' district in which the applicant intends to do business], evidence of the applicant's authority to use the name in each such State must accompany the application.").

Shiepe frequently called Customs to check on the status of the application for a name change and assured the Supervisory Customs Entry Inspector ("Entry Inspector") who received the application that the Chief of the Broker Compliance and Evaluation Branch had reviewed the documents and approved the application.  See Examination of Daunis, at C.R. 100-02, 105-06, 121-22; Memorandum from Janiszewski of 8/11/89, Agency Exh. 2/16, at C.R. 960.  Shiepe requested that the Entry Inspector give her approval over the telephone, but she refused.  Examination of Daunis, at C.R. 122.  Instead, on May 23, 1990, the Entry Inspector drafted a memorandum, signed by an Assistant District Director, that informed Customs' Headquarters that Modawest's name was being changed to MCHB, forwarded copies of a filing believed to have been approved by the California Secretary of State and requested the issuance of a license under the name of MCHB.  See id. at C.R. 122-23; Memorandum from Rasmussen, Assistant District Director, Entry Division, Los Angeles District, to Director, Entry Procedures and Penalties Division, Chief, Entry Licensing & Restricted Merchandise Branch, U.S. Customs Service, Washington, DC, of 5/23/90, Agency Exh. 18, at C.R. 1135.  The Entry Supervisor testified that

"[she] took the application that Mr. Shipe submitted, and in good faith, [she] just forwarded the application, as he said, to headquarters for them to review." <u>See</u> Examination of Daunis, at C.R. 122.

Soon after receiving the Assistant District Director's Memorandum, the Acting Division Director reviewed MCHB's Articles of Incorporation. Memorandum from Worley, Acting Director, Field Operations Division, to Assistant District Director, Entry Division, Los Angeles, CA, of 5/31/90, Agency Exh. 19, at C.R. 1136. He concluded that MCHB was a new corporation requiring a formal application for a broker's license. <u>Id.</u>

As a result, by letter dated June 15, 1990, Customs advised Shiepe that (1) based upon a review of the MCHB Articles of Incorporation, it appeared a new corporation was formed and, therefore, a new corporate application was required, (2) MCHB's Articles of Incorporation did not specifically authorize the corporation to conduct Customs brokerage business, and (3) since MCHB did not exist until March 23, 1990, the date of the California Secretary of State's "filed" stamp, then the unfiled Amendment dated March 5, 1990 was invalid and a new Amendment authorizing MCHB to engage in Customs brokerage business was needed. Letter from Trotter, Acting District Director, to Shiepe, of 6/15/90 ("Letter from Trotter of 6/15/90"), Agency Exh. 2/27-2/29, at C.R. 971-73.

On June 20, 1990, Shiepe informed Customs that he had already submitted a "duplicate certificate of amendment to Sacremento requesting an 'original' stamp on it" and "[u]pon receipt of the certificate of amendment (duplicate)" he would immediately forward it to the agency. Letter from Shiepe to Broker Compliance, U.S. Customs Services, of 6/20/90 ("Letter from Shiepe of 6/20/90"), Agency Exh. 2/30, at C.R. 974. Shiepe asked Customs to process MCHB's

application while he obtained the stamped copy of the Amendment from the California Secretary of State.  Id.  Shiepe did not acknowledge Customs' notice that the March 5, 1990 Amendment was invalid.  Id.

Shiepe did not send an Amendment dated March 5, 1990 to the California Secretary of State, as he represented to Customs.  See Cross-Examination of Scott, at C.R. 584; Affidavit of Elissa A. Brown, Agency Exh. 27/2-27/3, at C.R. 1143-44; Decision and Order of the Administrative Law Judge, at C.R. 57.  Rather, he provided the Secretary of State with an Amendment dated June 18, 1990.[2]  Decision and Order of the Administrative Law Judge, at C.R. 57; Amendment of 6/18/90, Shiepe Exh. 6, at C.R. 885.

On July 13, 1990, Customs returned MCHB's application to Shiepe because it did not contain the information set forth in Customs' June 15, 1990 letter, including an Amendment that expressly authorized the corporation to engage in customs brokerage services.  See Letter from Rasmussen, Assistant District Director, Entry Division, to Shiepe of 7/13/90 ("Letter from Rasmussen of 7/13/90"), Agency Exhs. 15/1-15/2, at C.R. 1120-21.

On July 31, 1990, the California Secretary of State returned the June 18, 1990 Amendment because the changes to the "purpose" clause did not conform to the requirements of the California Corporations Code.  Letter from Chandler, Corporation Documents Examiner, to Modawest of 7/31/90 ("Letter from Chandler of 7/31/90"), Shiepe Exh. 9, at C.R. 888.  As a result, Shiepe then submitted an Amendment dated August 8, 1990 to the California Secretary of

---

[2]     This document was signed, inter alia, by Shiepe as Treasurer.  Amendment of 6/18/90, Shiepe Exh. 6, at C.R. 885.

State.[3]  Letter from Chandler of 7/31/90 with note enclosing corrected amendment and Amendment of 8/8/90, Shiepe Exh. 9, at C.R. 888 and 890.  On August 16, 1990, the California Secretary of State returned the Amendment because the "purpose" clause had been amended improperly.  Letter from Glenn, Corporation Documents Examiner to Modawest, Shiepe Exh. 10, at C.R. 895.

On September 11, 1990, in response to Customs' July 13, 1990 letter, Shiepe provided Customs with, inter alia, the June 20, 1990 license application with modifications,[4] a certification from the California Secretary of State dated September 4, 1990 that reflected that an Amendment to MCHB's Articles of Incorporation dated August 23, 1990 [5] had been endorsed and filed on August 24, 1990, and a letter of resignation from the Vice President of MCHB dated June 19,

---

[3]     This document was signed, inter alia, by Shiepe as Treasurer.  Amendment of 8/8/90, Shiepe Exh. 9, at C.R. 890.

[4]     At first, Shiepe testified that the June 20th application was thrown in the trash. Examination of Shiepe, at C.R. 675-76.  However, when confronted with the fact that there were two applications bearing the same date, the Honorable Richard L. Sippel (the "Administrative Law Judge") notes that Shiepe "quickly changed his story . . . ." Decision and Order of the Administrative Law Judge, at C.R. 58, n.12.  Shiepe testified that "[t]his wasn't the one that was thrown in the trash.  It is the same one; we just added [the language in item 17] on and sent it in . . . . Same signature, that's correct." Examination of Shiepe, at C.R. 677.  Item 17 reflects Modawest as a previous applicant for a Customhouse Broker's License that is "[c]urrently in business."  Application for Customhouse Broker's License of 6/20/90, Agency Exh. 2/40-2/41, at C.R. 987-88.  The Administrative Law Judge concluded that "[t]his is yet another example of [Shiepe's] tendency to mangle the facts."  Decision and Order of the Administrative Law Judge, at C.R. 58, n.12.

[5]     This document was signed, inter alia, by Shiepe as President.  Amendment of 8/23/90, Agency Exhibit 2/32, at C.R. 977.  MCHB's stated purpose in the August 23, 1990 Amendment was "to engage in the transaction of customs brokerage business." Id.

1990.[6]  See Certification from March Fong Eu, Secretary of State of State of California, of 9/4/90

with attachment, Agency Exh. 2/31-2/32, at C.R. 976-77; Letter from Shiepe to Broker

Compliance, U.S. Customs Services, of 9/11/90 with attachments, Agency Exhs. 2/37-2/41, at

C.R. 984-989.  It should be noted that the Amendment dated August 23, 1990 falsely represented

that Michelle Couderc was an officer of MCHB at that time.[7]  See Amendment of 8/23/90,

Agency Exhibit 2/32, at C.R. 977; Letter of Resignation from Michelle Couderc of 6/19/90,

Shiepe Exh. 7, at C.R. 886; Letter of Resignation from Michelle Couderc of 6/29/90, Shiepe Exh.

8, at C.R. 887.

On July 24, 1992, following an investigation of the customs broker's license application

submitted by MCHB, the Commissioner of Customs authorized the Los Angeles District

Director (the "Director") to institute revocation proceedings against Shiepe.  Stipulation of

7/26/95, Agency Exh. 33, at C.R. 1194-95; Letter from Hallett, Commissioner of Customs, to

Heinrich, District Director, U.S. Customs Service, of 7/24/92, Agency Exh. 11, at C.R. 1113.  On

---

[6]      The Administrative Law Judge concluded that based upon the chronology of events the certified copy of MCHB's Articles of Incorporation and the Vice President's resignation letter were probably forwarded to Customs with Shiepe's September 11, 1990 letter. Decision and Order of the Administrative Law Judge, at C.R. 58.

[7]      In her resignation letter dated June 29, 1990, Michelle Couderc notified MCHB's Board of Directors that she was resigning her position as Vice President of MCHB but would remain as the Secretary for the Board of Directors.  Letter of Resignation from Michelle Couderc of 6/29/90, Shiepe Exh. 8, at C.R. 887.  Remaining as the Secretary for the Board of Directors is not equivalent to serving as an officer of the corporation or, in this case, as Secretary of MCHB, as represented in the Amendment dated August 23, 1990.  See Amendment of 8/23/90, Agency Exhibit 2/32, at C.R. 977.  Under California law, a corporate officer must be chosen by a corporation's Board of Directors.  Cal. Corp. Code § 312(b) (West 1998).  There is no evidence in the record that Michelle Couderc was serving her tenure as elected Secretary to MCHB at the time she signed the above-referenced Amendment.

July 30, 1992, the Director issued a Notice of Preliminary Proceedings and a Proposed Notice to Show Cause and Statement of Charges. Notice and Proposed Notice, Agency Exh. 10, at C.R. 1107-12. On September 11, 1992, Shiepe responded to the proposed charges. Response to Notice to Show Cause, Agency Exh. 9, at C.R. 1090-1106. On August 11, 1994, Customs issued an Amended Notice of Preliminary Proceedings and an Amended Proposed Notice to Show Cause And Statement of Charges. Amended Notice and Proposed Notice, Agency Exh. 7/1-7/6, at C.R. 1047-1052. A Preliminary Proceeding was held on February 7, 1995. Memorandum In Support Of Defendant's Response In Opposition To Plaintiff's Motion For Summary Judgment On The Administrative Record at 3.

On June 29, 1995, the Director issued a Notice to Show Cause And Statement of Charges and a Notice of Revocation Proceedings.[8] Notices, at C.R. 1341, 1345-48, 1342-43. Shiepe was charged with violating (1) 19 C.F.R. § 111.11, requiring that an association or corporation be empowered under its articles of incorporation to transact customs brokerage business, (2) 19 C.F.R. § 111.28(a), requiring every licensed officer of a licensed corporate broker to exercise responsible supervision and control over the transaction of the corporation's customs business, (3) 19 C.F.R. § 111.32, prohibiting a broker from filing, procuring or assisting in the filing of any claim, or of any document, affidavit, or other papers, known by such broker to be false and knowingly giving, soliciting or procuring the giving of any false or misleading information in matters pending before the Treasury Department or any representatives thereof, (4) 19 C.F.R. §

---

[8]     The action against Modawest was dismissed pursuant to a settlement agreement. Discussion Between the Administrative Law Judge and Counsel on 7/25/95, at C.R. 85-87; Letter from Weise, Commissioner of Customs, to Heinrich, District Director, U.S. Customs Service, Agency Exh. 28, at C.R. 1152.

111.53, providing for revocation of a license if the broker has, <u>inter</u> <u>alia</u>, (a) made or caused to be made in any application for any license or permit under this part, or report filed with Customs, any statement which was at the time and in light of the circumstances under which it was made, false or misleading with respect to any material fact, or has omitted to state in any application or report any material fact which was required and/or (c) violated any provision of any law enforced by Customs or the rules or regulations issued under any such provision, and (5) 19 C.F.R. § 111.94, requiring payment of an assessed broker's penalty within 60 days of the date of a final determination that the broker is liable for a monetary penalty. <u>Id.</u> at C.R. 1341,1345-1348.

On July 25-27, 1995, the Administrative Law Judge conducted a revocation hearing pursuant to 19 U.S.C. § 1641(d)(2)(B) (1988) and 19 C.F.R. § 111.67 (1992). The Administrative Law Judge found that Customs had introduced a "preponderance of substantial and reliable evidence" to support all of the charges against Shiepe, with the exception of the charge that Shiepe had failed to pay a broker's penalty in violation of 19 C.F.R. § 111.94. Decision and Order of the Administrative Law Judge, at C.R. 80-81.

On October 28, 1996, the Department of the Treasury adopted the Administrative Law Judge's recommended Decision and Order to revoke Shiepe's customs broker's license. Memorandum from Simpson, Deputy Assistant Secretary (Regulatory, Tariff & Trade Enforcement), to Weise, Commissioner of Customs, of 10/28/96 ("Memorandum from Simpson of 10/28/96"), at C.R. 46-49. On December 26, 1996, Shiepe filed a Complaint contesting the revocation of his license. On March 3, 1997, Defendant filed an Answer. On December 12, 1997, Shiepe filed a Motion for Summary Judgment on the Administrative Record ("Motion for Summary Judgment") challenging the revocation of his license.

## III

## JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1581(g)(2) (1988), this Court has exclusive jurisdiction to review any decision of the Secretary to revoke a customs broker's license under § 641(d)(2)(B) of the Tariff Act of 1930, 19 U.S.C. § 1641(d)(2)(B) (1988).  See also 19 U.S.C. § 1641(e)(1) (1988) (governing appeals to the U.S. Court of International Trade).

In a case commenced under 19 U.S.C. § 1641(d)(2)(B) (1988), "[t]he findings of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive."  19 U.S.C. § 1641(e)(3) (1988).

Additionally, 28 U.S.C. §§ 2640(a)(5) and (d) (1988) direct that this Court review the Secretary's decision to revoke a broker's license under 19 U.S.C. § 1641(d)(2)(B) (1988) as provided in 5 U.S.C. § 706 (1988).

Pursuant to 5 U.S.C. § 706(2)(E) (1988),

> [t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provide by statute . . . .

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  "The Court may not substitute its judgment for that of the administrative agency," and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's finding from being supported by substantial evidence."  Barnhart v. United States Treasury Dep't, 9 CIT 287, 290, 613 F. Supp. 370, 373 (1985).

Additionally, pursuant to 5 U.S.C. § 706(2)(A) (1988),

> [t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

Therefore, "[i]n reviewing the Secretary's findings as to legal issues, the Court will review whether the Secretary's decision to revoke [a] license constitutes an abuse of discretion." Urbano v. United States, 967 F. Supp. 1322, 1329 (CIT 1997), aff'd, 146 F.3d 1346 (Fed. Cir. 1998). Specifically,

> [a]fter satisfying itself [sic] the agency has acted within its statutory authority and the action was accompanied by appropriate procedural protections and supported by substantial evidence, the Court must inquire whether the rationale of the agency is both discernible and defensible. In so doing, the Court may not substitute its judgment for that of the agency, but need only assure itself the decision was rational and based on consideration of relevant factors.

Barnhart, 9 CIT at 290-91, 613 F. Supp. at 374. Under this standard,

> [w]hen the penalty chosen by an agency is within the range of sanctions provided by applicable disciplinary regulations, the severity of the sanction imposed is within the discretion of the agency. Further, the imposition of a sanction within the authority of an administrative agency is not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases.

Id. at 291, 613 F. Supp. at 374 (quoting Temp Trucking and Transfer Corp. v. Dickson, 405 F. Supp. 506, 514 (1975)) (citations omitted).

The Court reviews a license revocation case based on the whole record before it or those parts cited by a party and takes due account of the rule of prejudicial error. See 5 U.S.C. § 706 (1988).

## IV

## DISCUSSION

In essence, Shiepe contends that the actions that resulted in the revocation of his license were due to confusion about the procedure for filing corporate documents with the California Secretary of State and Customs and that the revocation of his license is fundamentally unfair.[9] Shiepe provides no citations to the administrative record or legal authority to support his

---

[9]     Shiepe also argues that Customs should not have required him to file an Amendment to Modawest's Articles of Incorporation explicitly specifying that the corporation had the authority to engage in customs business because Customs was imposing a requirement not set forth under Customs regulation 19 C.F.R. § 111.11 (c)(1) nor under California corporate law. See Memorandum In Support Of Plaintiff's Motion For Summary Judgment at 2-3.

Shiepe's argument fails for two reasons. First, the Court finds that Customs' interpretation of its regulation is not unreasonable. The agency set forth its interpretation of 19 C.F.R.§ 111.11 (c)(1) in an inter-agency memorandum. See Memorandum from Chief, Entry Rulings Branch, to Director, Field Operations Division, of 7/17/89, Shiepe Exh. 1, at C.R. 873-75. Because the agency's interpretation was provided through an inter-agency memorandum rather than the notice and comment procedures associated with an agency rule-making, the agency's analysis is an interpretative rule. See Timken Co. v. United States, 11 CIT 786, 805-06, 673 F. Supp. 495, 514 (1987) (citing Cabais v. Egger, 690 F.2d 234, 238 (D.C. Cir. 1982) (quoting Gibson Wine Co. v. Snyder, 194 F.2d 329, 331 (D.C. Cir. 1952) (An interpretative rule is "'[a statement] as to what the administrative officer thinks the statute or regulation means.'" )). "Unlike legislative rules, which have the force of law if reasonable and validly promulgated, interpretative rules do not bind a court and a court is free to substitute its judgment for the agency's, although it may defer to the agency's interpretation." Id. at 806, 673 F. Supp. at 514. In this case, the agency's interpretation that 19 C.F.R. § 111.11(c)(1) requires articles of incorporation to specifically state that the corporation is empowered to transact customs brokerage business and trumps contrary state law is reasonable. Therefore, the court defers to the agency.

Second, Shiepe was informed of this requirement in writing but, at the time, did not raise a legal objection. See Memorandum from Janiszewski of 8/11/89, Agency Exh. 2/16, at C.R. 960; Letter from Trotter of 6/15/90, Agency Exh. 2/27, at C.R. 971; Letter from Rasmussen of 7/13/90, Agency Exhs.15/1-15/2, at C.R. 1120-21. Instead, Shiepe proceeded to abide by the requirement and did so in a false and/or misleading manner. See Amendment of 8/21/89, Agency Exh. 16/2, at C.R. 1125; Letter from Shiepe of 6/20/90, Agency Exh. 2/30, at C.R. 974; Examination of Daunis, at C.R. 185, 239; Cross-Examination of Scott, at C.R.584; Examination of Shiepe, at C.R. 699-701; Amendment of 6/18/90, Shiepe Exh. 6, at C.R. 885.

contentions.  The Court has no obligation to search the record or provide legal research when

counsel provides no citations.

The Secretary's decision to revoke Shiepe's customs broker's license was predicated upon

the results of an adjudicatory hearing that conformed with 5 U.S.C. § 557 (1988) and was

required under 19 U.S.C. § 1641(d)(2)(B) (1988).  See Letter from Zarate, Attorney-Advisor,

Office of the Assistant General Counsel (Enforcement), Department of the Treasury, to Halley,

Assistant Regional Counsel, of 7/12/96, at C.R. 44; Decision and Order of the Administrative

Law Judge, at C.R. 51.  Therefore, this Court will hold the agency's decision unlawful and set it

aside if it is unsupported by substantial evidence.

Upon its review of the record, the Court concludes that substantial evidence supports the

Administrative Law Judge's conclusions that

> Shiepe, as a licensed Customs broker and as a corporate officer, was at all times in control of and had the duty to supervise activities of persons affiliated with Modawest and MCHB with respect to their contacts with [Customs].  Shiepe was responsible for the conduct of Customs business by Modawest without it first being properly empowered under its articles of incorporation and for the wrongful issuance of a Customs broker license.  Shiepe was responsible for the intentional submission to [Customs] of a corporate amendment for Modawest which falsely represented that the amendment had been filed with and accepted by the California Secretary of State.  Shiepe was responsible for the intentional submission to [Customs] of a request for a name change from Modawest to MCHB which was in fact an application for a Customs broker license for MCHB.  Shiepe was grossly negligent in the extreme by failing to submit a proper application for a name change for MCHB.  Shiepe intentionally attempted to mislead [Customs] by submitting a false and misleading Amendment for MCHB which predated its articles of incorporation and which failed to disclose that the Amendment repeatedly had not been accepted for filing by the California Secretary of State.  In furtherance of his scheme, Shiepe affirmatively and falsely represented to [Customs] that he was seeking a "duplicate" Amendment from California's Secretary of State when in fact there was no original on file with the Secretary of State for which a copy could be obtained.  Finally, in furtherance of a scheme to mislead [Customs], Shiepe knowingly submitted an Amendment for MCHB which falsely represented that Michelle Couderc was an officer at a time after she had resigned her position.

Decision and Order of the Administrative Law Judge, at C.R. 80.  Therefore, the Administrative

Law Judge's findings of facts, adopted by the Secretary, are conclusive.

In addition, the Secretary's decision to revoke Shiepe's license did not constitute an abuse

of discretion.  Pursuant to 19 U.S.C. § 1641(d) (1988) and 19 C.F.R. §§ 111.53 and 111.91

(1992), Customs may either suspend or revoke a customs broker's license or issue a monetary

penalty not to exceed $30,000 for several reasons.  These reasons include that a broker has (1)

"made or caused to be made in any application for any license or permit . . . or report filed with

Customs, any statement which was, at the time and in light of the circumstances under which it

was made, false or misleading with respect to any material fact, or has omitted to state in any

application or report any material fact which was required," and (2) "violated any provision of

any law enforced by Customs or the rules or regulations issued under any such provision."  19

C.F.R. § 111.53(a) and (c) (1992).

The record supports the Administrative Law Judge's finding that Shiepe's actions fell

within the above-quoted sections of 19 C.F.R. § 111.53 (1992).  Decision and Order of the

Administrative Law Judge, at C.R. 61-74.  Therefore, it was within the Secretary's discretion to

chose which sanction to impose.  The Secretary's decision to revoke Shiepe's license was not an

abuse of discretion because it was rational and took into account all relevant factors.  See

Memorandum from Simpson of 10/28/96, at C.R. 47-49.

Accordingly, the Secretary's decision to revoke Shiepe's license is affirmed.

**V**

**CONCLUSION**

For the reasons set forth above, the Secretary's revocation of Shiepe's license is supported by substantial evidence and does not constitute an abuse of discretion. Plaintiff's Motion for Summary Judgment is denied and the Secretary's revocation of Custom Broker's License No. 7114 issued to Shiepe is affirmed.

_____
Evan J. Wallach, Judge

Dated: February 4, 1999
New York, New York

## ERRATA

Please make the following changes to <u>Shiepe v. United States</u>, Slip Op. 99-15, February 4, 1999, Court No. 96-12-02866:

Page 11, line 21: after "Record" insert footnote * stating the following: Plaintiff incorrectly identified his USCIT R. 56.1 Motion as a "Motion for Summary Judgment on the Administrative Record." Since the Motion was filed pursuant to USCIT R. 56.1 rather than USCIT R. 56, the Court treats Plaintiff's Motion as a Motion for Judgment Upon the Administrative Record rather than a Motion for Summary Judgment.

Page 11, line 21-22: replace "("Motion for Summary Judgment")" with "("USCIT R. 56.1 Motion")".

Page 17, line 2-3: replace "Plaintiff's Motion for Summary Judgment" with "Plaintiff's USCIT R. 56.1 Motion".